And we are going to go on to the very last case of the day, and that is 21-1389 Stephen Zirko v. Karen Rabideau. Mr. Richards. Thank you, Your Honor. Your Honor, I hesitate to call any case simple, but I think this is a relatively simple case. As Your Honors are aware, Stephen Zirko filed a suit claiming that prison officials had failed to protect him from an attack and from a danger that he had allured them to. The case comes on summary judgment. Obviously, a lot of the inferences and the twist is against summary judgment. All facts are construed in the plaintiff's favor. In additional, I've cited some case law, which I think is possibly honored more in the breach than the observance, but it's very important, in that questions of subjective intent are rarely, rarely to be decided on summary judgment. In this particular case, even more so, because Stephen Zirko testified at deposition. He testified really without contradiction that the remaining defendant, defendant Shaw, he had a threat from his roommate or cellmate that the cellmate was going to beat him, Zirko, within an inch of his life. He conveyed that threat to Shaw, and Shaw, and I think this is unrebut or at least must be taken as true for purposes of summary judgment, said, basically, we've moved you twice, solve your own problems. If that isn't deliberate indifference, I don't know what is. The thing that I think stands out to me that I benefit from hearing you speak to, Mr. Richards, is the passage of time. We don't know exactly when that complaint occurred, right? We have an approximation of the November, December, what, 2015, is it? I believe you're correct. We have the injury is sustained in the first part of January, but is there anything in the record that shows that there was an in-between communication to Officer Shaw? No. In fact, Mr. Zirko made some more generalized complaints to other people, but those people are no longer in the lawsuit because the complaint, the complaints were too generalized. There were things like he's a drug addict, he's a bad guy, et cetera, et cetera, and I don't think those things are. So then you, is there, you can say it's not the right question, but the question that pops into my mind is, as of January 10th, 2016, when this unfortunately happened to Mr. Zirko, doesn't he have to show that something, you know, at a time close to that, that he was aware of objectively a risk posed to Mr. Zirko, and then he subjectively declined to address it? Well, I think the point of staleness, as I read the case law, has to do with if you make a complaint, and the complaint is vague, nonspecific, conclusory, then, or if you say you're complaining about something, this was a threat that happened five months ago, six months ago, I just, I'm generally afraid of this guy, then the courts have sometimes said, well, that's stale, it's no longer objectively a threat. But this is a case in which it's not that the, it's not that there's a different, a huge gap between the time. He got the threat, he complained. You said about a month or so, right? I think it was about a month or so between the time of his complaint and the time he was actually convicted. A month or two. I don't want to get you sidetracked on this. No, I understand, and I think the record will. It's footnote two of Judge Tharp's opinion, what I have in mind. Zirko testified that he told Officer Shaw that Pelagi had threatened to beat him, quote, month or two prior to the incident. Well, yeah, but in other words, as you read that sentence, I think what it means is that a month or two prior to the incident, the threat had occurred, not that he had delayed a month or two reporting the threat to Shaw. Yeah, no, I don't sense there was any delay in reporting it. What I sensed is that when he was reporting it, he reported it to Shaw, Shaw said nothing, said what he said, you know, and take the allegation he did nothing, but then a month or two went by, and then we get to the January 10th, 2016 date. Right, and I think that goes, if it goes to anything, as to causality. There might be an you know, it was that the gap in between those two events, the complaint and the actual attack, is such that one can conclude that the danger had passed, it had dissipated, something of that sort. But I think that's a factual dispute, which is not to be resolved upon summary judgment. I think we're now in agreement, I can see that, Your Honor, that the gap is between the complaint and the attack. The gap is not between the threat and the complaint. I think a gap between the threat and the complaint would be a better argument that, objectively, there's not a problem. For one thing, because you're not, you're waiting months and months to complain with this guy still in your cell. According to Zerko, he was threatened, he complained, and nothing was done. And again, had the situation reversed, in fact, if we had moved for summary judgment, we might have had an argument, because there's no real reputation in the record that Shaw said what he said, which is, I moved you twice, deal with your own problems. You can tell an inmate, deal with his own problems, but you can't tell him, deal on your own with a threat of violence, specific violence from another inmate. And that's exactly what happened here. So for those reasons, and I don't think there's much more to say, on any topic, the motion for summary judgment should be reversed. Now, there's a lot of back and forth in the briefs about different cases. There are some with facts more extreme, there are some with facts much lesser. I would suggest to you, this honor, that this fact pattern falls in between some of the cases which have found liability and some of the cases which have not. But it's far closer to the cases that have found liability. There's a specific inmate named, he's a cellmate, a specific threat named, not just I don't like him, or I'm afraid of him, or whatever. And there's a specific response which is indicative of deliberate indifference. So for all of those reasons, I also am mindful and I would agree with the appellees that you can't really use the cases as a laundry list of, you know, and make exact comparisons and find that there should be a finding in liability of one case and not another, or finding in summary judgment of one another. They're very factually specific, there's all falls within the sweet spot, and therefore summary judgment should have been denied. I see I have some time left. I'm open to further questions, but nothing else that I need to argue. Reserve it. I reserve it, thanks. Morning, Ms. Sitchin. Good morning, or perhaps good afternoon soon. Good afternoon soon, right. All right, good morning, or good afternoon, counsel. May it please the court, Assistant Attorney General Chai Sitchin on behalf of Defendant Appellee Joel Shaw, a former staff member at Stateville Correctional Center. Summary judgment was proper on Mr. Zirko's failure to protect claim under the Eighth Amendment because a jury could not reasonably find that Mr. Shaw was deliberately indifferent to an excessive risk to Mr. Zirko's safety. Mr. Zirko. Did the court grant a summary judgment saying that the threat was too vague and generalized to establish that Shaw had knowledge of a serious risk of harm? Does the record reveal whether Shaw engaged in any discussion as to the threat that had been posed, or ask for any details to assess its seriousness? No, Your Honor. The record does not reflect that Mr. Shaw took any action after hearing the reported threat from Mr. Zirko. And okay, I don't believe that that is sufficient to show deliberate indifference, however, because the duty to investigate or take any action is only triggered if the evidence is such that the reason that Mr. Shaw knew that Mr. Zirko actually faced a serious threat of excessive risk. So the fact that he did not take any action does not mean that he was deliberately indifferent. And given the circumstances here, it would have been speculated for a jury to find that Mr. Shaw knew that Mr. Zirko faced an actual danger at the time that the fight between Mr. Zirko and his cellmate actually occurred. You noted that Pelleggi had not been disciplined for fighting since approximately 1998, but is there evidence in the record that Shaw was aware of that history? I don't believe that the record reflects whether Mr. Shaw was aware of the cellmate's disciplinary history or lack thereof, but the record does show that Mr. Shaw was aware of several other circumstances that rendered the reported threat just not plausible. So just to give you a couple of those circumstances, one is that in that one to two month interim between when Mr. Zirko reported the threat and when the fight occurred, there was no evidence that Mr. Zirko ever repeated to Mr. that he was in danger or that he requested protective custody, that he sought any sort of emergency help, let alone that Mr. Shaw was aware of any of those requests. And there was also no evidence that Mr. Zirko could not have repeated his request for help or requested protective custody. And the evidence also showed that when the fight occurred, Mr. Zirko and his cellmate had been celled together for approximately nine months without any incidents. So there was this long period of peaceful coexistence. And the record showed that Mr. Shaw was aware of that because as Mr. Zirko testified, Mr. Shaw allegedly said, I had to move you already or someone around you twice. We, you know, deal with your own problems. And just to address that alleged statement by Mr. Shaw, I don't think that a jury could infer deliberate indifference from that alleged statement given the surrounding circumstances. I think a jury would have to infer that Mr. Shaw knew that Mr. Zirko wanted a different cellmate and that's what he was requesting. But I think it would be speculative for a jury to find that Mr. Shaw knew at the time of the fight that Mr. Zirko was actually in danger as opposed to having merely wanted a different cellmate. And that's because, as I mentioned, Mr. Shaw was involved in the previous successful transfers. So he knew that Mr. Zirko knew how to request a transfer successfully. And also he was aware of the fact that during that one to two month period when the threat did not materialize, he was aware that Mr. Zirko never requested further help and never offered further detail about the alleged threat. But don't we have to take the complaint that was made to Officer Shaw for what the plaintiff says that it was. It wasn't, I'm looking for a new cellmate, we're not getting along. It was rather the guy threatened to beat me or kill me that way, right? So we take it on the terms that Mr. Zirko reports this. Right. That's correct, Your Honor, that the court has to take that as true that Mr. Zirko said that. But prison staff are not required to believe every profession of fear by an inmate. So, unfortunately, it's not uncommon for inmates to complain about their cellmates and not every officer of fear. I think that it would be obviously a much closer case, but I don't think that a jury could find that Mr. Shaw actually knows that Mr. Zirko is in danger given the surrounding circumstances. The fact that Mr. Zirko and his cellmate have this long history of peaceful coexistence, the fact that Mr. Zirko has this history of successfully requesting... There's evidence that Shaw knows of the long history of the peaceful existence? I believe so, because the testimony from Mr. Zirko is that Mr. Shaw is the one who says, I've already had to move you twice. So if he knows about that movement, then he should know how long they've been together. And then the other facts that I think are relevant to this are that he knows that Mr. Zirko has this history of successfully requesting transfers. And there's no evidence, so he knows that Mr. Zirko knows how to give the correct information or necessary information, such as explaining why he thinks that his cellmate wants to attack him. And he also... Or he could have requested protective custody. And... Sorry, I just lost my train of thought there. Oh, and also in the fact pattern that Your Honor posits, if there was any evidence that Mr. Zirko could not follow up immediately by providing more information or reporting the threat to others immediately, I think that would be a relevant factor. But in our case, there is no such evidence that Mr. Shaw somehow prevented that from happening or that any other circumstances prevented Mr. Zirko from following up appropriately. I'd also like to point out that besides for the lack of evidence that Mr. Zirko... Or sorry, that Mr. Shaw was aware of any supposed reason for the threat, there was also no evidence that Mr. Shaw was aware of any other alleged complaints about the cellmate, either by Mr. Zirko or by Mr. Shaw was aware of any other circumstance that could render the threat plausible, such as any unusual behavior by the cellmate or any recent violent incidents involving that cellmate. So considering the evidence as a whole, the district court correctly concluded that it would be speculative for a jury to find that at the time of the fight, after this long period of peaceful coexistence and lack of follow-up from Mr. Zirko regarding this alleged threat, a jury could not find that Mr. Shaw knew at that time that the cellmate posed an impending risk of serious harm to Mr. Zirko. Unless the court has any further questions, we respectfully request that this court affirm the district court's judgment. Thank you. Thank you. Thank you very much. Mr. Richards. Thank you, Your Honor. Your Honor, just quickly, as— Mr. Richards asked for two minutes. Just make it a—thanks. Oh, okay. Thanks for the 33 seconds or whatever. In any event, Your Honor, just to address a few particular points, as Your Honor has already guessed or gleaned from the—Shaw was not deposed, and I don't believe he gave an affidavit either. So basically, a lot of what the appellees think that Shaw thought is pure speculation. There's no evidence that Shaw disbelieved the threat. I mean, there's just no evidence of that. Deal with your own problems means—one meaning could be, I don't care. Whatever happens happens. You keep asking for transfers. I'm done with it. The other point about that statement is, I think it's a statement to Zirko that, you know, you've done this too many times, you've complained too many times, whatever. You're not getting any more transfers. And the fact that he had already been with his inmate for nine months means that I think the inference that he's, you know, a transfer hound or applying for transfers every two seconds is probably not correct. So for all those reasons, this is a case which should go to the jury. There'll be arguments to the jury about whether action could have prevented this or whether action should have been taken. But those are jury questions. Those are weighing subjective and objective together. Shaw may testify at trial to a whole different series of events, and that's his right. But at this point, it should go to trial. It should go to jury. And if no further questions. Thank you. Thank you. Thank you. Thank you very much, Mr. Richards, Ms. Citron. The case will be taken under advisement.